861 P.2d 599

**In the Matter of A Member of the State Bar of Arizona, William H. BOETTCHER, Respondent.**

No. SB–93–0060–D.

Disc. Comm. No. 89–1588.

Supreme Court of Arizona.

Oct. 4, 1993.

Ralph E. Mahowald, Phoenix, for respondent.

Patrick Irvine, Bar Counsel, Harriet L. Turney, Chief Bar Counsel, Phoenix, for the State.

**JUDGMENT AND ORDER**

This matter having come on for hearing before the Disciplinary Commission of the Supreme Court of Arizona, it having duly rendered its decision and no timely appeal having been filed before the Court,

IT IS ORDERED, ADJUDGED AND DECREED that WILLIAM H. BOETTCHER, a member of the State Bar of Arizona, is hereby censured for conduct in violation of his duties and obligations as a lawyer, as disclosed in the commission report attached hereto as Exhibit A.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that WILLIAM H. BOETTCHER shall pay restitution in the following amounts:

$740.60 to Royal Insurance Company
$250.00 to Liberty Mutual Insurance Company,

and that the Court has been informed that WILLIAM H. BOETTCHER has paid such restitution in full as of September 1, 1993.

IT IS FURTHER ORDERED that pursuant to Rule 52(a)(8), Rules of the Supreme Court of Arizona, the State Bar of Arizona is granted judgment against WILLIAM H. BOETTCHER for costs incurred by the State Bar of Arizona in the amount of $555.31, together with interest at the legal rate from the date of this judgment.

EXHIBIT A

BEFORE THE DISCIPLINARY
COMMISSION OF THE
SUPREME COURT OF ARIZONA

Comm. No. 89–1588

In the Matter of

WILLIAM H. BOETTCHER,
a Member of the State
Bar of Arizona, RESPONDENT.

DISCIPLINARY COMMISSION REPORT

Filed Oct. 1, 1993.

This matter came before the Disciplinary Commission of the Supreme Court of Arizona on April 17, 1993, on an agreement for discipline by consent, pursuant to Ariz.R. Sup.Ct., Rule 56(a). The agreement, providing for censure and restitution, was tendered prior to the issuance of a

formal complaint, and was reviewed by the Commission without referral to a hearing committee, pursuant to Rule 53(b).[1]

## Decision

After review of the record on appeal, the Commission, by a concurrence of the eight Commissioners present,[2] accepts the agreement for discipline by consent providing for censure and restitution. The restitution shall be made to his former clients, and shall equal the amount paid by them to satisfy the judgment for costs entered against them, or, if that judgment is still outstanding, Respondent shall satisfy the judgment himself. The Commission unanimously adopts the tender of admissions and agreement for discipline by consent and the joint memorandum in support of agreement for discipline by consent as its findings of fact and conclusions of law.

## Facts

In September 1991, Respondent was retained by a woman (the "Client") to file a lawsuit regarding an automobile accident in which she had been involved.[3] Respondent did not file the complaint until August 8, 1983, one day prior to the expiration of the statute of limitations. Prior to filing the complaint, Respondent maintained minimal contact with the Client and with the insurance companies for the prospective defendants.

After the complaint was filed, Respondent sent the complaint and summons to a process service company for service on the named defendants, who were: the driver of the other car ("Defendant A"), the owner of the other car ("Defendant B"), the company who owned the truck ("Defendant C"), and the driver of the truck, whose company owned the truck ("Defendant D").

Respondent included the addresses of Defendants A and C on the summons, and included a copy of the police report for the use of the process server.

For the next year, Respondent made inquiries of the process server nearly every month regarding why service had not yet been made. Among the process service company's excuses for failing to serve process was that it was unable to locate the defendants, that the defendants were out of town, that they had moved, and that they no longer lived in the state. On August 3, 1984, a few days before the cause of action was to abate, Respondent heard that the process service company had gone out of business. Respondent gave the papers to his daughter, who was qualified to serve process. She was able to serve process only on Defendants B and C prior to the August 3 deadline.

Respondent filed a motion to extend the time for serving the defendants, in order to serve Defendants A and D. The motion stated that Respondent was still attempting to locate Defendant D, as the Corporation Commission, with which Respondent thought the defendant company would have registered, had no records for Defendant D. The motion also stated that, although Respondent had previously believed that Defendant A had left the state, service on Defendant A was now possible. Respondent had obtained this information from communications with the process servers; he did not make any efforts on his own to verify this information. Had he done so, he would have discovered that the addresses of all of the defendants were easily obtainable, and had been from the beginning.

In subsequent oral and written statements to the court and opposing counsel, Respondent stated that he had since deter-

1. Rule 56(a) provides that a respondent may tender a conditional admission of a charge in exchange for a stated form of discipline other than disbarment. Rule 53(b) further provides that when an agreement for discipline is filed prior to the issuance of a formal complaint, it shall be submitted directly to the Commission for review.

2. Commissioners Bonwell and Goldsmith did not participate in these proceedings. Jessica Funkhouser, of Phoenix, participated as an ad hoc member.

3. The accident occurred when a car swerved in front of the Client's car to avoid being hit by a truck that had just pulled onto the road from the shoulder.

mined that the process service company had never actually made any attempt to serve the process, thereby, through inference, correcting his previous careless and incorrect statements to the court.

As stated above, Respondent was only able to serve Defendants B and C. As Defendant B was merely the owner of the vehicle, and not the driver, however, that party had no liability for the accident. In addition, because it could not be shown that the driver of the truck was in the course of doing business at the time of the accident, Defendant C had no liability. In April 1985, Defendants B and C filed motions for summary judgment, which were granted.

Unfortunately, as service was never made upon Defendants A and D, who were the drivers of the other vehicles involved and may well have been liable, they filed motions for dismissal in April 1985, on the grounds that the cause of action relating to them had abated. The judge denied Respondent's request for extension of time to file, and granted the defendants' motions for dismissal. In denying Respondent's request, the judge noted that Respondent did not exercise due diligence in serving defendants within the prescribed one year period, as required by former Rule 6(f), Ariz. R.Civ.P.

Prior to the dismissal, the case was diligently pursued, with depositions scheduled and interrogatories answered on behalf of the Client. Prior to the filing of the motions for summary judgment and dismissal, opposing counsel wrote to Respondent soliciting a settlement proposal. Respondent responded, in writing, that he was willing to recommend a certain figure for settlement. He did not state that he had the Client's authority.[4] However, the defendants never responded, as the motions for summary judgment and dismissal had been filed by this time.

Those motions were filed in April 1985. Respondent recalls that he told the Client about the motions on one or two occasions, although the Client does not remember any such conversations. On June 3, 1985, Respondent finally advised the Client in writing that the motions had been filed and were scheduled to be heard in two weeks. The motions were heard on June 17, and were granted. Respondent's request for reconsideration was denied, and formal written judgment reflecting the granting of the motions and the awarding of costs against the Client was entered on October 30, 1985. Respondent has agreed to satisfy the costs judgment entered against the Client.

After the dismissal of the case, the Client obtained other counsel, and presented a claim against Respondent and his professional liability insurance carrier. The claim was settled, and Respondent and his insurance carrier paid the Client and his counsel $100,000. Of those settlement funds, Respondent paid the deductible of $5,000 personally.

### Discussion of Decision

Respondent and the State Bar have conditionally admitted that Respondent's conduct was in violation of DR 1–102, DR 6–101(A)(3), ER 1.2, ER 1.4, and ER 8.4.[5] The Commission agrees.[6]

In determining the appropriate sanction, the Court looks for guidance in the Ameri-

---

**4.** Respondent has told the State Bar that this letter was not meant to be a formal settlement offer but, rather, was intended as a suggestion of a recommended settlement figure. Respondent explains that he had authority from the Client to solicit an offer, but did not have authority to settle for any specific amount.

**5.** As the conduct occurred both before and after February 1, 1985, both the former Code of Professional Responsibility and the current Rules of Professional Conduct apply.

**6.** In the first paragraph of the section of the Tender of Admissions and Agreement for Discipline by Consent entitled "Admissions and Recommended Discipline," Respondent acknowledges violating DR 7–101. However, in the following paragraph, the State Bar conditionally admits that DR 7–101 is not at issue. The Commission assumes that this was admitted by Respondent in error, and does not find this violation.

can Bar Association's *Standards for Imposing Lawyer Sanctions. In re Tarletz,* 163 Ariz. 548, 789 P.2d 1049 (1990). The Commission uses that guideline, as well.

Standard 4.4 considers lack of diligence. Standard 4.43 provides for reprimand (censure in Arizona) when a lawyer is negligent and does not act with reasonable diligence in representing a client, and causes injury or potential injury to a client. Respondent's negligence resulted in the dismissal of the Client's case.

Standard 6.1 deals with false statements and misrepresentation. Standard 6.13 provides for censure when a lawyer is negligent in determining whether statements or documents are false, and causes injury or potential injury to a party to the legal proceeding, or causes an adverse or potentially adverse effect on the legal proceeding. Standard 6.14 provides for informal reprimand when a lawyer engages in an isolated instance of neglect in determining whether submitted statements or documents are false or in failing to disclose material information upon learning of its falsity, and causes little or no actual or potential injury to a party, or causes little or no adverse or potentially adverse effect on the legal proceeding. The Commission understands that Respondent was unaware that his motion for extension of time to serve process contained false statements. However, Respondent knew he was relying on information provided to him by a company that had already exhibited complete lack of responsibility; Respondent should have made some effort to determine the validity of the information he was providing to the court. While there was potential injury to the client and the legal proceeding, this was, apparently, an isolated instance of neglect.

Standard 4.6 addresses lack of candor to a client. Standard 4.63 provides for cen-

sure when a lawyer negligently fails to provide a client with accurate or complete information, and causes injury or potential injury to the client. Respondent failed to fully inform his client of the hearing on the remaining defendants' motions to dismiss the case until two weeks prior to the hearing. Although Respondent may have mentioned the motions in telephone conversations with the Client prior to that time, Respondent admits he did not make any attempt to explain the full import of the motions to his client until his letter of June 3.

The Commission also reviewed Standards 9.22 and 9.32 on aggravation and mitigation. These are the factors that may justify an increase or decrease in the sanction to be imposed. The Commission found no factors in aggravation.[7] In mitigation, the Commission found the absence of any prior disciplinary history in nearly twenty years of practice, the absence of a dishonest or selfish motive, a timely good faith effort to make restitution by his willingness to settle the suit filed against him by the Client, and full and free disclosure and cooperative attitude throughout the disciplinary process.

Respondent did not intentionally allow the Client's case to be dismissed, but unwisely relied on a process serving company to handle location and service of the parties in a responsible manner. The Commission appreciates that Respondent did not simply hand the matter over to the process server and then ignore the case; rather, he maintained regular contact with the process server concerning when the service would be complete. These efforts, by themselves, however, were insufficient. Respondent's awareness of the numerous difficulties the company was having in serving or even locating any of the four defendants should have caused him to look into the matter further. Instead, he continued to accept

7. Although Standard 9.22 includes "substantial experience in the practice of law" as a factor in aggravation, the Commission did not consider this in aggravation in this instance. Rather, the Commission viewed his substantial experience without prior discipline as a mitigating factor.

vague excuses until a few days prior to the abatement of the cause of action, at which time all he could do was scramble to try, unsuccessfully, to have all four defendants served within one to two days. Respondent was clearly negligent.

The Commission acknowledges numerous mitigating factors, which could possibly serve to reduce the sanction from a censure to an informal reprimand. However, there was both potential and actual injury to the Client, in that Respondent filed a motion on behalf of the Client containing false statements, and allowed the Client's case to be dismissed. The fact that Respondent settled the lawsuit filed by the Client and is now willing to pay the judgment entered against the Client does not eliminate the injury. The Standards indicate reprimand is appropriate only when little or no injury occurs; when the misconduct results in potential or actual injury, a censure is called for. In addition, the State Bar and Respondent, himself, have agreed that censure and restitution are both appropriate and acceptable. The Commission agrees, and accepts the agreement for discipline by consent.

/s/ Raymond W. Brown
Raymond W. Brown, Chair
Disciplinary Commission